**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| COREY BATCHELOR, | ) | |
| | ) | Case No.  18 CV 8513 |
| Plaintiff, | ) | |
| | ) | Honorable John Kness |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**INDIVIDUAL DEFENDANTS' ANSWER
TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

Defendants, Michael Bosco, Daniel McWeeny, Gerald McGovern, James McCardle, George Winistorfer, Robert Flood, Robert Tovar, Mary A. Nitsche for the Estate of Lawrence Nitsche, Sean Rice for the Estate of Robert Rice, and Victoria Keough for the Estate of Thomas Keough (collectively, "Individual Defendants"), by and through their attorneys, HALE and MONICO LLC, respectfully submits their answer to Plaintiff Corey Batchelor's ("Plaintiff") Third Amended Complaint. In so answering, Individual Defendants state as follows:

**INTRODUCTION**

1.      In the wake of the brutal murder of a retired Chicago Police Department officer's wife, the individual Defendants – all Chicago Police Department officers – ignored their vow to serve and protect all Chicago citizens and, instead, used physical violence and psychological coercion to force Plaintiff Corey Batchelor into confessing to a crime he did not commit.  The individual Defendants used similar tactics and received similar results with respect to Mr. Batchelor's friend, Kevin Bailey.  At the time, Mr. Batchelor was a mere nineteen years old, had no criminal history and no chance of withstanding the abhorrent abuse inflicted upon him by the individual Defendants.  The individual Defendants' physical violence took the form of punching,

kicking, choking and banging Mr. Batchelor's head into a wall, while their psychological coercion included sleep deprivation, isolation from family and access to counsel, an interrogation process that lasted over twenty-four hours, death threats, and false promises of leniency. Notably, at no time did the individual Defendants have a single piece of physical evidence from the crime scene tying Mr. Batchelor or Mr. Bailey to the murder, and, in fact, the physical evidence excluded them as individuals who were at the scene. The tactics and methods utilized by the individual Defendants were part of Defendant City of Chicago's longstanding policies and practices for the Chicago Police Department, wherein police officers and detectives used violence and psychological manipulation to falsely implicate innocent persons in crimes and cover up that conduct through the use of false police reports and a "code of silence." Due to Defendants' conduct, Mr. Batchelor languished fifteen years in Illinois prison for a crime he did not commit. Refusing to accept the fate Defendants chose for him, Mr. Batchelor continued to fight to prove his innocence. Finally, in January 2018, in the wake of overwhelming evidence of Mr. Batchelor's innocence, the State dismissed all of the charges against Mr. Batchelor, and the Circuit Court of Cook County, Illinois vacated his conviction. Mr. Batchelor files this Complaint seeking justice for the wrongs Defendants inflicted upon him with impunity.

**ANSWER:** Individual Defendants admit that Plaintiff was 19 years old when he was convicted of crimes for which he spent approximately 15 years in Illinois prison, that the State dismissed charges against Plaintiff, and that the Circuit Court of Cook County, Illinois vacated Plaintiff's conviction. Individual Defendants admit Plaintiff was convicted for murdering a Chicago Police Department ("CPD") officer's wife, and that Plaintiff has filed a Complaint regarding Defendants' alleged wrongdoing. Individual Defendants deny the remaining allegations contained in Paragraph 1.

## JURISDICTION

2.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Mr. Batchelor's rights as secured by the United States Constitution.

**ANSWER:**    Individual Defendants admit that this action is brought pursuant to 42 U.S.C. § 1983. Individual Defendants deny the remaining allegations contained in paragraph 2.

3.      This Court has jurisdiction for Mr. Batchelor's constitutional claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction for his state law claims pursuant to 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391(b).  The events giving rise to this Complaint occurred in this judicial district.

**ANSWER:**    Individual Defendants admit that this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Individual Defendants further admit venue is proper under 28 U.S.C. § 1391(b).  Individual Defendants deny the remaining allegations contained in Paragraph 3.

## THE PARTIES

4.      Plaintiff Corey Batchelor is a 49-year-old, African American resident of Chicago, Illinois.  At the time of his arrest, Mr. Batchelor was nineteen years old and lived with his family in Chicago's Washington Heights neighborhood.

**ANSWER:**    Individual Defendants admit that Corey Batchelor is an African American and at the time of his arrest Plaintiff was nineteen years old. Individual Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 4.

5.      Defendant City of Chicago is an Illinois municipal corporation and is and/or was the employer of each of the individual Defendants described in paragraphs 6 through 16, below. The City of Chicago is responsible for the policies and practices of the Chicago Police Department.

3

**ANSWER:**    Individual Defendants admit the allegations contained in Paragraph 5.

6.      Defendant special representative for Robert Rice (hereinafter, "Defendant Rice" or "Rice"), to be subsequently appointed by the Court, is named because, upon information and belief, Robert Rice is deceased. At all times relevant to this Complaint, Robert Rice was a police officer or was otherwise employed by the Chicago Police Department, acting under color of law and within the scope of his employment in connection with the investigation of the murder at issue. Mr. Batchelor brings suit against Defendant Rice in his individual capacity.

**ANSWER:**    Individual Defendants admit the allegations contained in Paragraph 6.

7.      At all times relevant to this Complaint, Defendant Michael Bosco was a police officer or was otherwise employed by the Chicago Police Department, acting under color of law and within the scope of his employment in connection with the investigation of the murder at issue. Mr. Batchelor brings suit against Defendant Bosco in his individual capacity.

**ANSWER:**    Individual Defendants admit the allegations contained in Paragraph 7.

8.      Defendant special representative for Lawrence Nitsche (hereinafter, "Defendant Nitsche" or "Nitsche"), to be subsequently appointed by the Court, is named because, upon information and belief, Lawrence Nitsche is deceased. At all times relevant to this Complaint, Lawrence Nitsche was a police officer or was otherwise employed by the Chicago Police Department, acting under color of law and within the scope of his employment in connection with the investigation of the murder at issue.  Mr. Batchelor brings suit against Defendant Nitsche in his individual capacity.

**ANSWER:**    Individual Defendants admit the allegations contained in Paragraph 8.

9.      At all times relevant to this Complaint, Defendant Thomas Keough was a police officer or was otherwise employed by the Chicago Police Department, acting under color of law

and within the scope of his employment in connection with the investigation of the murder at issue. Mr. Batchelor brings suit against Defendant Keough in his individual capacity.

**ANSWER:**     Individual Defendants admit the allegations contained in Paragraph 9.

10.     At all times relevant to this Complaint, Defendant Daniel McWeeny was a police officer or was otherwise employed by the Chicago Police Department, acting under color of law and within the scope of his employment in connection with the investigation of the murder at issue. Mr. Batchelor brings suit against Defendant McWeeny in his individual capacity.

**ANSWER:**     Individual Defendants admit the allegations contained in Paragraph 10.

11.     At all times relevant to this Complaint, Defendant Gerald McGovern was a police officer or was otherwise employed by the Chicago Police Department, acting under color of law and within the scope of his employment in connection with the investigation of the murder at issue. Among other things, according to a June 7, 1989 General Progress Report related to Ms. Woods' murder and bearing Defendant McGovern's name as a reporting officer, Defendant McGovern interviewed Mr. Batchelor and Mr. Bailey on or about that date. Mr. Batchelor brings suit against Defendant McGovern in his individual capacity.

**ANSWER:**     Individual Defendants admit that Gerald McGovern was employed by the Chicago Police Department acting within the scope of his employment in connection with the investigation of the murder at issue. Individual Defendants further admit that the General Progress Report dated June 7, 1989 bears Defendant McGovern's name as a reporting officer and that the report indicates that Defendant McGovern spoke with Mr. Batchelor and Mr. Bailey on or about that date. Individual Defendants admit that Defendant McGovern is being sued in his individual capacity. Individual Defendants deny all remaining allegations contained in paragraph 11.

12.     At all times relevant to this Complaint, Defendant James McCardle was a police

5

officer or was otherwise employed by the Chicago Police Department, acting under color of law and within the scope of his employment in connection with the investigation of the murder at issue. Mr. Batchelor brings suit against Defendant McCardle in his individual capacity.

**ANSWER:**     Individual Defendants admit the allegations contained in Paragraph 12.

13.     At all times relevant to this Complaint, Defendant Robert Tovar was a police officer or was otherwise employed by the Chicago Police Department, acting under color of law and within the scope of his employment in connection with the investigation of the murder at issue. Mr. Batchelor brings suit against Defendant Tovar in his individual capacity.

**ANSWER:**     Individual Defendants admit the allegations contained in Paragraph 13.

14.     At all times relevant to this Complaint, Defendant George Winistorfer was a police officer or was otherwise employed by the Chicago Police Department, acting under color of law and within the scope of his employment in connection with the investigation of the murder at issue. Mr. Batchelor brings suit against Defendant Winistorfer in his individual capacity.

**ANSWER:**     Individual Defendants admit the allegations contained in Paragraph 14.

15.     At all times relevant to this Complaint, Defendant Robert Flood was a police officer or was otherwise employed by the Chicago Police Department, acting under color of law and within the scope of his employment in connection with the investigation of the murder at issue. Mr. Batchelor brings suit against Defendant Flood in his individual capacity.

**ANSWER:**     Individual Defendants admit the allegations contained in Paragraph 15.

16.     At all times relevant to this Complaint, Defendant John Stout was a police officer or was otherwise employed by the Chicago Police Department, acting under color of law and within the scope of his employment in connection with the investigation of the murder at issue. Mr. Batchelor brings suit against Defendant Stout in his individual capacity.

**ANSWER:** Individual Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 16.

17. Defendants as-yet-unknown law enforcement officers of the Chicago Police Department were police officers or were otherwise employed by the Chicago Police Department, acting under color of law and within the scope of their employment in connection with the investigation of the murder at issue. Mr. Batchelor brings suit against each officer described in this paragraph in his individual capacity.

**ANSWER:** Individual Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 17.

18. The officers described in paragraphs 6 through 17 of this Complaint are collectively referred to as the "Defendant Officers."

**ANSWER**: Individual Defendants admit that Plaintiff has named the individuals in paragraphs 6-16 of this Complaint as the "Defendant Officers," but deny the remaining allegations contained in paragraph 18.

## FACTS
### The Crime and Initial Investigation

19. On June 1, 1989, Lula Mae Woods was the wife of retired Chicago Police Department Officer Thomas Woods and lived at 9310 South Union Street, Chicago, Illinois.

**ANSWER:** Individual Defendants admit the allegations contained in Paragraph 19.

20. Sometime before 2:15 p.m. on June 1, 1989, Ms. Woods withdrew money from a First National Bank of Evergreen Park branch office located in Chicago, Illinois.

**ANSWER:** Individual Defendants admit the allegations contained in Paragraph 20.

21. On June 1, 1989, at approximately 2:15 p.m., one of Ms. Woods' neighbors observed Ms. Woods lying on the floor of her open garage at her home on South Union Street with

blood on her clothing and called the police.

**ANSWER:**     Individual Defendants admit the allegations contained in Paragraph 21.

22.     Shortly after the neighbor contacted the police, Chicago Police Department officers arrived at Ms. Woods' home and found her unconscious, lying on her back in a pool of blood. Ms. Woods' body lay on top of a Domino's Pizza hat (the "Domino's Hat"). Next to her body was a black purse strap that appeared to have been cut and a white bloody towel.

**ANSWER:**     Individual Defendants admit that Chicago Police Department officers arrived at Ms. Woods' home and found her unconscious, lying on her back in a pool of blood. Individual Defendants admit that Ms. Woods' body was found she was on top of a Domino's Pizza hat. Individual Defendants admit that a black purse strap that appeared to have been cut was found next to Ms. Woods' body. Individual Defendants deny the remaining allegations contained in Paragraph 22.

23.     It appeared to the officers that Ms. Woods had been stabbed and was dead. The officers called for additional assistance. Chicago Police Department detectives, including Defendants Rice, Bosco and Nitsche, arrived on the scene and began to investigate Ms. Woods' murder.

**ANSWER:**     Individual Defendants admit officers called for additional assistance and that Chicago Police Department detectives Rice, Bosco and Nitsche went to the scene to investigate the murder of Ms. Woods. Individual Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 23.

24.     Subsequent investigation revealed that Ms. Woods had been stabbed multiple times and had died from the wounds.

**ANSWER:**     Individual Defendants admit the allegations contained in Paragraph 24.

8

25.     On or about June 1, 1989, the detectives and other police officers searched the area around Ms. Woods' home and found: (a) a black handbag belonging to Ms. Woods that contained various items; (b) a First National Bank of Evergreen Park bank book and plastic cover belonging to Ms. Woods; (c) First National Bank of Evergreen Park deposit slips also belonging to Ms. Woods; and (d) a bloody, six-inch steak knife with a wooden handle.

**ANSWER:**     Individual Defendants admit that on or about June 1, 1989 after a search of the area the following items were found: a black handbag belonging to Ms. Woods; a First National Bank of Evergreen Park bank book and plastic covering belonging to Ms. Woods; First National Bank of Evergreen Park deposit slips also belonging to Ms. Woods; and a bloody, six-inch steak knife with a wooden handle. Individual Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 25.

### The Forensic Evidence

26.     Various suitable prints were recovered from the items found in the above-described handbag recovered near the crime scene.

**ANSWER:**     Individual Defendants admit the allegations contained in paragraph 26.

27.     A shaft of dark brown hair and a shaft of brown to dark brown hair were recovered from the bloody towel.

**ANSWER:**     Individual Defendants admit the allegations contained in paragraph 27.

28.     A fragment of brown to dark brown human hair was recovered from inside the Domino's Hat.

**ANSWER:**     Individual Defendants admit the allegations contained in paragraph 28.

29.     At no time did any of the forensic evidence connect Mr. Batchelor or Mr. Bailey to Ms. Woods' murder.  Neither Mr. Batchelor nor Mr. Bailey had anything to do with the crime.

Both are completely innocent.

**ANSWER:** Individual Defendants deny the allegations contained in Paragraph 29.

## The Defendant Officers Sought to Quickly Resolve the Murder

30. Because Ms. Woods was the wife of a retired Chicago Police Department officer, the Defendant Officers set out to quickly find her killer or killers.

**ANSWER:** Individual Defendants admit that they set out to find Ms. Woods' killer or killers. Individual Defendants deny the remaining allegations contained in paragraph 30.

31. The Defendant Officers chose to disregard physical and forensic evidence and, instead, resorted to physical violence, psychological abuse and other egregious misconduct to coerce false confessions out of Mr. Batchelor and Mr. Bailey.

**ANSWER:** Individual Defendants deny they engaged in misconduct. Individual Defendants deny the remaining allegations contained in paragraph 31.

### *A Source Identifies Two Alternative Suspects*

32. On June 2, 1989, Chicago Police Department detectives received information from two separate sources that individuals known as "Rodney" and "Little Man" or "Little Boy" had committed Ms. Woods' murder.

**ANSWER**: Individual Defendants admit that Chicago Police Department employees at some point during the investigation became aware of individuals known as "Rodney" and "Little Man" or "Little Boy." Individual Defendants deny the remaining allegations contained in paragraph 32.

33. Defendants determined "Rodney" to be "Rodney Davis" and "Little Man" or "Little Boy" to be Vernon Mapson.

**ANSWER**: Individual Defendants admit the allegations contained in paragraph 33.

34. Working in conspiracy with the other Defendants, Defendant Stout prepared a

police report falsifying the results of polygraph examinations he conducted on Rodney Davis and Vernon Mapson. Specifically, Defendant Stout reported that Davis' and Mapson's polygraph examinations indicated "No Deception," whereas in fact, the actual results revealed that Davis and Mapson were being deceptive.

**ANSWER:** Individual Defendants deny that they falsified police reports. Individual Defendants deny the remaining allegations contained in paragraph 34.

35. Neither Stout nor any other Defendant disclosed the polygraph results to the prosecutor or defense prior to Mr. Batchelor's conviction, but those results would have impeached both the fabricated police reports and, more generally, the good faith of the investigation into Mr. Batchelor.

**ANSWER:** Individual Defendants deny the allegations contained in Paragraph 35.

36. In addition, and on information and belief, the City of Chicago's policy and custom of retaining polygraph test results separately from the case files regarding homicide investigations, as well as its policy and custom of not producing polygraph results as part of criminal pre-trial discovery, worked to ensure that Mr. Batchelor did not have access to this important evidence.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 36.

***Various Sources Pointed to Another Alternate Suspect, Larry Johnson, As Ms. Woods' Killer***

37. Defendants set their sights on Mr. Batchelor as a suspect in Ms. Woods' murder as a result of uncorroborated statements made by a person named Larry D. Johnson.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 37.

38. At the time Johnson pointed the finger at Mr. Batchelor, there had been numerous reports that Johnson was involved in the murder, which reports were known to various Defendant Officers, including Defendants Bosco and Keough.

**ANSWER:**    Individual Defendants admit that reports had been received that Johnson might be involved in the murder.   Individual Defendants deny the remaining allegations contained in Paragraph 38.

39.    At the time the Defendant Officers set their sights on Mr. Batchelor, he was inexperienced with the criminal justice system or the policies and practices implemented by Defendant City of Chicago and utilized by the Chicago Police Department to coerce false confessions.

**ANSWER:**    Individual Defendants deny that they coerced false confessions and further deny that there was a policy or practice of coercing false confessions. Individual Defendants deny the remaining allegations contained in Paragraph 39.

40.    On information and belief, Johnson was an alcoholic, drug addict and known liar.

**ANSWER:**    Individual Defendants lack knowledge or information in which to admit or deny the allegations contained in paragraph 40.

41.    Based on the information Defendants Bosco and Keough – among other Defendant Officers – claimed to have learned from Johnson, they decided to pin the murder on Mr. Batchelor.

**ANSWER**:    Individual Defendants deny the allegations contained in paragraph 41.

42.    In connection with the Defendants' efforts to point the finger at Mr. Batchelor and away from alternate suspects, Defendant Tovar prepared a false police report indicating that Mr. Johnson showed no deception on his polygraph, when that was not true.

**ANSWER:**    Individual Defendants deny the allegations in paragraph 42.

43.    Neither Defendant Stout nor any other Defendant disclosed the polygraph results to the prosecutor or defense prior to Mr. Batchelor's conviction, but those results would have impeached both the fabricated police reports and, more generally, the good faith of the

investigation into Mr. Batchelor.

**ANSWER:** Individual Defendants deny the allegations contained in Paragraph 43.

44.     In addition, on information and belief, the City of Chicago's policy and custom of retaining polygraph test results separately from the case files regarding homicide investigations, as well as its policy and custom of not producing polygraph results as part of criminal pre-trial discovery, ensured that Mr. Batchelor did not have access to this important evidence.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 44.

45.     Despite having no probable cause, on or about June 6, 1989, during the early afternoon, Defendants Bosco and Keough – among other Defendant Officers and Chicago Police Department officers – took Mr. Batchelor into custody near his home in Chicago, Illinois, and transported him to the Chicago Police Department's Area Two Violent Crimes Detective Division ("Area Two").

**ANSWER:** Individual Defendants admit that on June 6, 1989 Plaintiff was transported to the Chicago Police Department's Area Two Violet Crimes Detective Division. Individual Defendants deny the remaining allegations contained in Paragraph 45.

### Mr. Batchelor's Custodial Interrogation

46.     At Area Two, Mr. Batchelor was placed in an interrogation room with no clocks or outdoor-facing windows and was subjected to an interrogation process at that location and another location within the Chicago Police Department that lasted over twenty-four hours.

**ANSWER:** Individual Defendants admit that Plaintiff was at Area Two and the Polygraph Unit at some point during the course of the investigation. Individual Defendants admit that Plaintiff was in a room with no clocks or outdoor-facing windows. Defendants deny the remaining allegations contained in paragraph 46.

47.     At all times during the interrogation, Mr. Batchelor was in custody and not free to leave.

**ANSWER**:     Individual Defendants deny the allegations contained in paragraph 47.

48.     Throughout much of Mr. Batchelor's unduly protracted interrogation, Mr. Batchelor repeatedly told the interrogating Defendant Officers – including Defendants Rice, Bosco, Nitsche, Keough, McWeeny, McGovern and Tovar – that he was innocent and did not know any details about Ms. Woods' murder, which was true.

**ANSWER:**     Individual Defendants admit that initially Plaintiff denied involvement in the murder of Ms. Woods. Individual Defendants deny the remaining allegations contained in paragraph 48.

### *The Coercive Tactics*

49.     Unable to elicit a confession from Mr. Batchelor through the use of legitimate law enforcement techniques, the Defendant Officers – including Defendants Rice, Bosco, Nitsche, Keough, McWeeny, McGovern, and Tovar– resorted to the use of physically and psychologically coercive tactics consistent with the policies and practices approved by Defendant City of Chicago.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 49.

50.     Among the physically and psychologically coercive tactics employed by the Defendants Officers – including Defendants Rice, Bosco, Nitsche, Keough, McWeeny, McGovern, and Tovar – were the following:

- •     Physical violence, including choking, punching and kicking Mr. Batchelor, and banging his head against the wall of the interrogation room;

- •     Sleep deprivation, including deliberate actions to make sure that Mr. Batchelor could not fall asleep, such as banging on the interrogation room table;

- •     The use of a so-called "good cop" – namely, Defendant Nitsche – who

pretended to befriend Mr. Batchelor and offered to help stop the physical violence by encouraging Mr. Batchelor to tell the "bad cops" what they wanted to hear – knowing that Mr. Batchelor could not truthfully provide that information; and

• Psychological coercion, including –

      o      yelling at Mr. Batchelor;

      o      repeatedly calling Mr. Batchelor a liar and falsely claiming they had proof he was lying;

      o      threatening that if Mr. Batchelor did not tell the truth they would kill him, or he would wish he was dead; o isolating Mr. Batchelor from his family;

      o      subjecting Mr. Batchelor to a staged polygraph examination, knowing that Defendant Tovar – the person conducting the exam – would inform Mr. Batchelor that he had "failed" the exam;

      o      falsely representing the "results" of various polygraph examinations to manipulate Mr. Batchelor and break down his will to resist the Defendant Officers' pressure to get him to confess to a crime the Defendant Officers knew he did not commit; o repeatedly feeding Mr. Batchelor details of the murder ; and

      o      falsely promising leniency to Mr. Batchelor if he told the Defendant Officers what they wanted to hear – namely, that he and Kevin Bailey were involved in the murder at issue.

**ANSWER:**    Individual Defendants deny the allegations contain in paragraph 50 including a denial of all subparagraphs.

51.    In contrast to the Defendant Officers, who engaged in the above-described coercive interrogation techniques with impunity and pursuant to the policies and practices of Defendant City of Chicago, Mr. Batchelor was a vulnerable and frightened teenager, who was inexperienced with any criminal justice system, let alone the corrupt one put in place by Defendant City of Chicago.

**ANSWER:**    Individual Defendants deny the allegations contained in paragraph 51.

52.    The Defendant Officers' outrageous behavior terrified Mr. Batchelor, as it became increasingly clear to him during the interrogation that the Defendant Officers were not interested in the truth. The Defendant Officers convinced Mr. Batchelor that his failure to provide the information they wanted to hear would result in extreme physical harm or death.

**ANSWER:**    Individual Defendant deny the threat of extreme physical harm or death. Individual Defendants deny the remaining allegations contained in Paragraph 52.

53.    Knowing Mr. Batchelor's vulnerabilities, the Defendant Officers preyed on him – their own experiences, and the experiences of their colleagues, having taught them that their coercive tactics would result in a false confession.

**ANSWER:**    Individual Defendants deny the allegations contained in Paragraph 53.

*The Polygraph Examination*

54.    As alleged above, as part of the Defendant Officers' coercive tactics, they subjected Mr. Batchelor to a polygraph examination, knowing that its only purpose was to manipulate Mr. Batchelor into providing a false confession.

**ANSWER:**    Individual Defendants admit that Plaintiff was given a polygraph examination. Individual Defendants deny the remaining allegations contained in paragraph 54.

55.    On or about June 6, 1989, during the late evening, and after Mr. Batchelor had already been in custody for approximately eight hours and subjected to both physical violence and psychological coercion, Defendants Winistorfer and Flood transported Mr. Batchelor to Chicago Police Department Headquarters where Defendant Tovar subjected Mr. Batchelor to a lengthy, staged polygraph examination.

**ANSWER:**    Individual Defendants admit that Winistorfer and Flood transported Plaintiff to

Chicago Police Department Headquarters where Tovar completed a polygraph examination of Plaintiff. Individual Defendants deny the remaining allegations contained in paragraph 55.

56. As part of the Defendant Officers' coercive interrogation tactics, Defendant Tovar strapped Mr. Batchelor to the polygraph machine for more than two hours in order to manipulate and scare Mr. Batchelor and further break down his will to resist.

**ANSWER:** Individual Defendants admit that Defendant Tovar completed a polygraph examination of Plaintiff. Individual Defendants deny they engaged in "coercive interrogation tactics." Individual Defendants deny the remaining allegations contained in paragraph 56.

57. Despite Defendants' tactics, Mr. Batchelor's polygraph examination revealed truthfulness and no deception.

**ANSWER:** Individual Defendants deny "tactics" and further deny the remaining allegations contained in paragraph 57.

58. Defendants suppressed and did not disclose the actual readout and results of Mr. Batchelor's polygraph examination until this civil litigation.

**ANSWER:** Individual Defendants deny the allegations contained in Paragraph 58.

59. Instead, Defendants Tovar, Winistorfer and Flood conspired to fabricate, and fabricated, police reports related to the sham polygraph examination. Defendant Tovar falsely reported that Mr. Batchelor failed the polygraph examination while knowing that this representation was false.

**ANSWER**: Individual Defendants deny the allegations contained in paragraph 59.

60. On or about June 7, 1989, in or around the early morning, Mr. Batchelor was transported back to the Area Two interrogation room where various Defendant Officers – including, Defendants Rice, Bosco, Nitsche, McWeeny and McGovern – continued their coercive

tactics – which at this point included utilization of the results of the sham polygraph examination – to get Mr. Batchelor to confess to a crime he did not commit.

**ANSWER:** Individual Defendants admit that on June 7, 1989 Plaintiff was transported back to Area Two for further questioning following his polygraph examination. Individual Defendants deny they participated in "coercive tactics." Individual Defendants deny the remaining allegations contained in paragraph 60.

61. At the time Mr. Batchelor returned to Area Two, he had been in custody overnight, and for approximately twelve hours, and had not been allowed to sleep.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 61.

### Kevin Bailey's Coerced Confession

62. On or about June 7, 1989, during the morning, Defendant Officers, including Defendant McWeeny, took Mr. Bailey into custody and brought him to Area Two for questioning.

**ANSWER:** Individual Defendants admit that on June 7, 1989 Bailey came to Area Two with Defendant McWeeny for questioning. Individual Defendants deny the remaining allegations contained in paragraph 62.

63. For over ten hours, various Defendant Officers, including Defendants Rice, Nitsche and McCardle, used coercive interrogation tactics, including physical violence, psychological abuse and a sham polygraph examination – similar to the circumstances under which the Defendant Officers conducted Mr. Batchelor's polygraph examination – to get Mr. Bailey to confess to a crime he did not commit.

**ANSWER:** Individual Defendants admit that Bailey confessed to the murder of Ms. Woods. Individual Defendants deny the remaining allegations contained in paragraph 63.

64. Despite Defendants' tactics, Mr. Bailey's polygraph examination revealed

truthfulness, not deception.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 64.

65. Defendants suppressed and did not disclose the actual readout and results of Mr. Bailey's polygraph examination until this civil litigation.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 65.

66. Instead, Defendants Tovar, Winistorfer and Flood conspired to fabricate, and fabricated, police reports related to the sham polygraph examination. Defendant Tovar falsely reported that Mr. Bailey failed the polygraph examination while knowing that this representation was false.

**ANSWER:** Defendants deny the allegations contained in paragraph 66.

67. Scared and fearing continued physical abuse by the Defendant Officers, on or about June 7, 1989, during the early evening, Mr. Bailey falsely confessed that he and Mr. Batchelor killed Ms. Woods.

**ANSWER:** Individual Defendants admit that Bailey confessed that he and Plaintiff killed Ms. Woods. Individual Defendants deny the remaining allegations contained in paragraph 67.

68. Prior to Mr. Bailey making his false confession, and in an effort to make it appear truthful, the Defendant Officers, including Defendants Rice and Nitsche, fed Mr. Bailey facts about Ms. Woods' murder.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 68.

69. Prior to Mr. Bailey's false confession, and to prevent detection of the verbal and physical abuse they inflicted on Mr. Bailey, Defendant Officers did not record any portion of their coercive interrogation of Mr. Bailey.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 69.

70.     Defendants Rice, Nitsche, and McArdle created false and fabricated police reports stating that Mr. Bailey had voluntarily confessed to the murder of Ms. Woods, when they knew he had not.  As such, the false confession had no legitimate bearing on probable cause to pursue criminal charges against Mr. Batchelor or Mr. Bailey, and the Defendants knew it.

**ANSWER:**     Individual Defendants deny the allegations contained in Paragraph 70.

### Mr. Batchelor's Coerced Confession

71.     On or about June 7, 2018, Defendants Rice, Keough and Bosco, among other Defendant Officers, continued their abusive efforts to coerce a confession out of Mr. Batchelor, which, at that time, included: (a) representing to Mr. Batchelor that Mr. Bailey had already admitted that he and Mr. Batchelor committed the murder; (b) punching, kicking and choking Mr. Batchelor; (c) threatening to kill Mr. Batchelor; (d) not allowing Mr. Batchelor to sleep; and (e) falsely promising Mr. Batchelor leniency if he confessed.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 71 including a denial of subparts a) through e).

72.     At that point, Mr. Batchelor had been in custody for over twenty-four hours.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 72.

73.     Severely sleep-deprived, isolated, terrified of continued physical violence, and convinced he would be killed if he did not confess, Mr. Batchelor felt compelled to falsely confess to being involved in Ms. Woods' murder.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 73.

74.     In preparation for the false confession, the Defendant Officers, including Defendant Nitsche, fed Mr. Batchelor the facts of Ms. Woods' murder.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 74.

75.     Only after the Defendant Officers were satisfied that Mr. Batchelor would falsely confess did they allow him to give a recorded statement, despite knowing that he was not making the statement voluntarily, but rather as a result of the Defendant Officers' physical and psychological abuse.  As a result of the Defendant Officers' physical and psychological abuse, neither at the time of the time of the recorded statement, nor at any other time that Mr. Batchelor may have been advised of his *Miranda* rights, was he capable of understanding them or competent to provide a knowing waiver.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 75.

76.     Defendants' improper tactics were intended to, and eventually did, overcome Mr. Batchelor's resistance.  On or about June 7, 1989, during the evening, Mr. Batchelor's will was overborne, and as a result he falsely confessed to being involved in Ms. Woods' murder.

**ANSWER:**     Individual Defendants admit that Plaintiff confessed to being involved in Ms. Woods murder. Individual Defendants deny the remaining allegations contained in paragraph 76.

77.     Prior to Mr. Batchelor's false confession, and to prevent detection of the physical and psychological abuse the Defendant Officers inflicted on Mr. Batchelor, they did not record any portion of their coercive interrogation of Mr. Batchelor.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 77.

78.     Mr. Batchelor's false confession was the product of the Defendant Officers' physical and psychological abuse, coercion and false promises of leniency.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 78.

### The Defendant Officers' Continued Coordinated Efforts
### and Fabrication of Additional Evidence

79.     The Defendant Officers have never disclosed their misconduct, instead misrepresenting, concealing and hiding that conduct, and causing it to be misrepresented,

concealed and hidden, as demonstrated by the following:

a      The Defendant Officers produced false and fraudulent police reports, which they signed or on which they provided some other indicia of their official nature, and inserted them into the case file, knowing the reports would be used as evidence to show Mr. Batchelor's purported involvement in Ms. Woods' murder.

b      As alleged above, prior to Mr. Batchelor's false confession, the Defendant Officers did not record the numerous hours of Mr. Batchelor's interrogations, thereby allowing the Defendant Officers to engage in their physical and psychological abuse without fear of being caught.

c      The Defendant Officers concealed their similar physical and psychological abuse and coercion of Mr. Bailey, which resulted in his false confession that implicated Mr. Batchelor.

d      The Defendant Officers concealed the true results of their polygraph examinations of alternate suspects and instead prepared false reports about these individuals.

e      The Defendant Officers did not examine all of the prints found on the various items in Ms. Woods' handbag, none of which matched Mr. Batchelor or Mr. Bailey, providing powerful evidence that someone other than Mr. Batchelor or Mr. Bailey killed Ms. Woods.

f      On information and belief, the Defendant Officers suppressed and destroyed additional evidence still unknown to Mr. Batchelor, which evidence would have shown Mr. Batchelor's innocence.

g      The Defendant Officers upheld a "code of silence" in which they did not disclose the improprieties alleged herein – among other known and unknown improprieties – in

order to protect each other and ensure they could continue to engage in their egregious behavior with impunity.

**ANSWER:** Individual Defendants deny that they engaged in any misconduct and therefore deny all allegations contained in paragraph 79 including the denial of subparagraphs a) through g).

### Defendants Ignored Evidence of Mr. Batchelor's Innocence

80. In addition to the affirmative misconduct described in the preceding paragraphs of this Complaint, the Defendant Officers willfully ignored and acted to undermine evidence that showed conclusively that Mr. Batchelor and Mr. Bailey had nothing to do Ms. Woods' murder.

**ANSWER:** Individual Defendant deny they engaged in misconduct and therefore further deny all allegations contained in paragraph 80.

81. The Defendant Officers disregarded the fact that none of the physical evidence collected by crime scene investigators connected Mr. Batchelor or Mr. Bailey to the crime and, indeed, much of it excluded them as possible individuals who committed the murder, including the fact that their hair was "dissimilar" from the hairs found in the Domino's hat and on the bloody towel.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 81.

### Mr. Batchelor's Wrongful Conviction

82. At all relevant times, the Defendant Officers acted intentionally and with malice, willfulness and reckless indifference towards Mr. Batchelor's rights.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 82.

83. As a result of the misconduct of the Defendant Officers, Mr. Batchelor was forced to spend over a year and a half in the Cook County Jail while he awaited trial, stripped of the

freedoms and rights afforded to American citizens.

**ANSWER:** Individual Defendants deny they engaged in misconduct. Individual Defendants admit that Plaintiff spent time in Cook County Jail while he awaited trial. Individual Defendants deny the remaining allegations contained in paragraph 83.

84.    As a result of Defendants' misconduct, Mr. Batchelor was prosecuted for and convicted of a crime he did not commit.  On April 5, 1991, after a bench trial, a Cook County Circuit Court judge found Mr. Batchelor guilty of first degree murder and armed robbery and burglary.  On April 23, 1991, the judge imposed a thirty-year sentence for the murder conviction and a ten year sentence for the armed robbery and burglary conviction, to run concurrently with each other.

**ANSWER:** Individual Defendants deny they engaged in any misconduct and further deny that Plaintiff was prosecuted for and convicted of a crime he did not commit. Individual Defendants admit the remaining allegations contained in paragraph 84.

85.    The State's case hinged upon Mr. Batchelor's coerced and fabricated confession.

**ANSWER:** Individual Defendants deny that Plaintiff's confession was false, fabricated, or coerced. Individual Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 85.

86.    The State did not present any eyewitness testimony or physical evidence of any kind linking Mr. Batchelor to the crime.

**ANSWER:** Individual Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 86.

### The Forensic Evidence Establishes Mr. Batchelor's Innocence

87.    While Mr. Batchelor was still serving his sentence, new evidence – DNA,

fingerprint/palm print and details about police misconduct – came to light to establish that he and Mr. Bailey were innocent.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 87.

88. Pursuant to 725 ILCS 5/116-3, Mr. Batchelor sought additional forensic testing on DNA and prints found at or near the crime scene, which the court allowed.

**ANSWER:** Individual Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 88.

89. New analysis of the prints recovered from the various items in Ms. Woods' handbag established that none of the prints came from Mr. Batchelor or Mr. Bailey and, in certain instances, did not come from Ms. Woods.

**ANSWER:** Individual Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 89.

90. DNA testing on the hair shafts found on the bloody towel and the hair fragment in the Domino's Hat found at the crime scene: (a) excluded Mr. Batchelor, Mr. Bailey and Ms. Woods as the source of the DNA; (b) revealed that the hairs came from a man; and (c) determined that the hair in the hat and the hair on the towel were consistent with each other.

**ANSWER:** Individual Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 90.

91. On January 30, 2018, after a review of Mr. Batchelor and Mr. Bailey's cases by Special Assistant Cook County State's Attorney Robert Milan, the State agreed to dismiss the charges against both individuals.

**ANSWER:** Individual Defendants admit that Special Assistant Cook County State's Attorney Robert Milan reviewed Plaintiff and Bailey's cases. Individual Defendants lack knowledge or

information sufficient to admit or deny the remaining allegations contained in paragraph 91.

92. On January 30, 2018, the Circuit Court of Cook County, Illinois vacated Mr. Batchelor and Mr. Bailey's convictions.

**ANSWER:** Individual Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 92.

**Suppression, Withholding and Destruction of Exculpatory and Impeachment Evidence**

93. Several Chicago Police Department gang crimes specialists were involved in the Woods homicide investigation, including Gang Crimes Officers Cruz and Worsham and Gang Crimes Sergeants Saternus and Pacanowski. Among other tasks, the gang crimes specialists gathered information on and arrested alternate suspects.

**ANSWER:** Individual Defendants admit that, during the Woods homicide investigation, Gang Crimes Officers Cruz and Worsham and Gang Crimes Sergeants Saternus and Pacanowski transported a potential person of interest to Area 2 to be interviewed by Detectives investigating the Woods homicide. Individual Defendants deny the remaining allegations contained in Paragraph 93.

94. While the detective division maintained one Woods homicide investigation file, the gang crimes office maintained another separate and parallel Woods homicide investigation file under a separate Records Division number.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 94.

95. On information and belief, the gang crimes file contained exculpatory and impeachment evidence, including information implicating people other than Plaintiff as offenders and other evidence pointing away from Plaintiff as the perpetrator.

**ANSWER**: Individual Defendants deny the allegations contained in paragraph 95.

96. The CPD documents that were produced to Plaintiff in advance of his criminal trial contained no notes or reports from any of the gang crimes specialists.

**ANSWER:** Individual Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 96.

97. The gang crimes file related to the Woods homicide investigation was never produced to Plaintiff.

**ANSWER:** Individual Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 97.

98. On information and belief, the Defendant Area Detectives assigned to the case also maintained a parallel working or "street" file regarding the Woods homicide investigation. These area detectives' street file(s) would have contained information shared between the area detectives and the gang crimes specialists.

**ANSWER:** Individual Defendants deny the allegations contained in Paragraph 98.

99. On information and belief, because the City of Chicago had a policy, practice and custom during this time of suppressing street files, and in order to suppress evidence that would have undermined their case against Plaintiff and Bailey, the Defendants suppressed the information contained in their street files(s), including the information developed through the gang crimes investigation.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 99.

100. In 2006, the City of Chicago destroyed the gang crimes file related to the Woods homicide investigation.

**ANSWER:** Individual Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 100.

27

**Defendants' Pattern and Practice of Coercing
False Confessions in Order to Secure Wrongful Convictions**

101. The constitutional violations that caused Mr. Batchelor's wrongful conviction were not isolated events. To the contrary, the constitutional violations resulted from Defendant City of Chicago's policies and practices of pursuing wrongful convictions by: (a) relying on coerced statements and profoundly flawed investigations; (b) fabricating inculpatory evidence and suppressing exculpatory evidence; (c) failing to adequately train, supervise, monitor, and discipline its police officers; and (d) and maintaining the police code of silence.

**ANSWER:**     Individual Defendants deny that Plaintiff suffered any constitutional violations and deny that he was wrongfully convicted. Individual Defendants deny the remaining allegations contained in paragraph 101.

102.    The wrongful convictions of innocent persons involving coerced and false statements include numerous cases in which Chicago Police Department detectives used the very same tactics the Defendant Officers employed against Mr. Batchelor and Mr. Bailey, including: (a) physical abuse; (b) psychological intimidation and manipulation; (c) fabrication of confessions and other material evidence; (d) sleep deprivation; (e) false promises of leniency in exchange for "cooperation" in the form of a statement; (f) denial of access to counsel and family; (g) feeding innocent suspects facts of the crime to be used in a subsequent confession; (h) failing to record any portion of the interrogation prior to the false confession; (i) suppressing exculpatory evidence; (j) falsifying police reports and other evidence; (k) using a polygraph machine as a prop in interrogations; and (l) using other unlawful tactics to secure the arrest, prosecution and conviction of persons without regard to their actual guilt.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 102 including a denial of subparts a) through l)

103.    Consistent with the municipal policy and practice described in the preceding paragraph, members of the Chicago Police Department, including but not limited to the Defendant Officers, systematically suppressed evidence pertaining to these fabricated and coerced statements, both from the prosecuting attorneys and from criminal defendants.

**ANSWER**:    Individual Defendants deny the allegations contained in paragraph 103.

104.    The Defendant Officers' coercion of false statements from Mr. Batchelor and Mr. Bailey was undertaken pursuant to, and proximately caused by, Defendant City of Chicago's policies and practices, as alleged herein.

**ANSWER:**    Individual Defendants deny the allegations contained in paragraph 104.

105.    Specifically, as alleged in detail below, at the time of Mr. Batchelor and Mr. Bailey's interrogations, Area Two detectives were utilizing systemic torture and abuse similar to that experienced by Mr. Batchelor and Mr. Bailey in connection with many other interrogations.

**ANSWER:**    Individual Defendants deny the allegations contained in paragraph 105.

106.    On information and belief, the results of the polygraph examinations conducted by Defendants Tovar, McCardle and Stout in connection with the death of Lula Mae Woods were maintained separately from Area Two pursuant to Chicago Police Department policies and customs.  Moreover, on information and belief, pursuant to Chicago Police Department policy and custom, the actual polygraph results were never disclosed to the prosecution or defense prior to Mr. Batchelor's conviction.  As further evidence of this policy and custom, the Chicago Police Department failed to disclose polygraph results obtained during its investigation into Cathy Trunko's murder on or about January 1980 to Mr. Daniel Andersen, the suspect who they falsely accused of the murder.  It was not until years later that Mr. Andersen obtained the polygraph records through civil discovery.

**ANSWER:** Individual Defendants deny the results of the polygraph examinations conducted by Defendants Tovar, McCardle, and Stout in connection with the death of Woods were maintained separately from Area Two. Individual Defendants deny the remaining allegations contained in paragraph 106.

107. Defendant City of Chicago actively encouraged the Defendant Officers to participate in its unlawful practices of coercing confessions by incentivizing detectives to close criminal investigations as expediently as possible, without regard to the innocence or guilt of the individuals arrested and prosecuted. Moreover, Defendant City of Chicago failed to adequately train, supervise, monitor and discipline Chicago Police Department Officers, condoned a code of silence that protected offending officers and encouraged officer perjury, and exhibited deliberate indifference to the constitutional violations described herein.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 107.

***Pattern and Practice of Torture and Abuse at Area Two***

108. At various times between 1977 and 1986, Jon Burge held various supervisory positions within Area Two.

**ANSWER:** Individual Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 108.

109. In August of 1989, in *Wilson v. City of Chicago*, No. 86 C 2360 (N.D. Ill.), a federal jury found that the Chicago Police Department had a policy and practice of "allowing police officers to torture persons suspected of killing or wounding officers."

**ANSWER:** Individual Defendants deny they tortured Plaintiff or Bailey. Individual Defendants deny that the Chicago Police Department had a policy and practice or allowing police officers to torture persons suspected of killing or wounding officers and therefore deny the remaining

30

allegations contained in paragraph 109.

110.    On November 2, 1990, the Chicago Police Department's Office of Professional Standards ("OPS") Director Gayle Shines approved as "compelling" the findings in a 25-page report made by OPS Investigator Michael Goldston that identified fifty instances where African American suspects in the custody of Area Two detectives under Burge's command were subjected to torture or other abuse, including the general finding that command personnel participated in "systematic" torture under Burge. Director Shines forwarded the report and findings to Chicago Police Department Superintendent LeRoy Martin, Sr.

**ANSWER:**    Individual Defendants deny they engaged in act of torture or other abuse. Individual Defendants further deny there was a general finding that command personnel participated in "systematic" of torture under Burge and therefore deny the remaining allegations contained in paragraph 110.

111.    In 1999, a United States District Court judge serving in the United District Court for the Northern District of Illinois found: "It is now common knowledge that in the early to mid1980s Chicago Police Commander Jon Burge and many officers working under him regularly engaged in the physical abuse and torture of prisoners to extract confessions."

**ANSWER:**    Individual Defendants deny they engaged in physical abuse and torture and therefore deny the remaining allegations contained in paragraph 111.

112.    In her concurring opinion in *Hinton v. Uchtman*, 395 F.3d 810, 822-23 (7th Cir. 2005), Seventh Circuit Court of Appeals Judge Diane Wood found that a "mountain of evidence indicates that torture was an ordinary occurrence at the Area Two station of the Chicago Police Department."

**ANSWER:**    Individual Defendants deny they engaged in torture and therefore deny the

remaining allegations contained in paragraph 112.

113. In July 2006, a report issued by a judicially-appointed Cook County Special Assistant State's Attorney (the "Special Prosecutor's Report") concluded that many of the more than 140 allegations of torture and abuse made by African American men against Burge had merit and that Burge was "guilty [of] abus[ing] persons with impunity." The Special Prosecutor's Report further concluded that "it necessarily follows that a number of those serving under his command recognized that if their commander could abuse persons with impunity, so could they."

**ANSWER:** Individual Defendants deny they engaged in torture or abuse and therefore deny the remaining allegations contained in paragraph 113.

114. Numerous Chicago City Council Members, during the July 24, 2007 public hearings on Area Two torture, acknowledged longstanding notice of, and strongly condemned, the "serial torture operation" and "pattern" of "heinous" "atrocities" at Area Two under Burge that was "condoned" and "acquiesced in."

**ANSWER:** Individual Defendants deny they engaged in torture and therefore deny the remaining allegations contained in paragraph 114.

115. In 2010, a federal jury found Burge guilty of three counts of perjury based on his false sworn statements that he did not physically abuse or torture any suspects and was not aware of any such physical abuse or torture perpetrated by officers under his command.

**ANSWER:** Individual Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 115.

116. In 2015, Defendant City of Chicago passed a Reparations Ordinance and Resolution, in which it acknowledged its pattern and practice of systematic Chicago Police torture, physical abuse, and coercion to extract confessions from African Americans in Chicago Police

32

Department custody at Area Two, between the years of 1972 and 1991.

**ANSWER:** Individual Defendants deny they engaged in torture, physical abuse and coercion and therefore denies the remaining allegations contained in paragraph 116 as phrased.

### *The Defendant Officers*

117. The Defendant Officers actively participated in the Chicago Police Department's pattern and practice of coercing false confessions and physical abuse. On information and belief, Defendants Rice, Bosco, Nitsche, Keough, McWeeny, Flood, Winistorfer, and McGovern all worked under the command of Burge at Area Two.

**ANSWER:** Individual Defendants deny they engaged in physical abuse or coercive tactics. Individual Defendants deny the remaining allegations contained in paragraph 117 as phrased.

118. Examples of the abuse committed by the Defendant Officers include the following:

(a) In or about November 1987, Defendant Rice engaged in an abusive interrogation of Robert Smith in connection with a homicide and armed robbery. After Smith alleged that Defendant Rice and another Chicago Police Department detective physically coerced him during an overnight, seventeen-hour custodial interrogation, while also denying him food, water, sleep and access to an attorney, the lower court suppressed the confession. The lower court found that Defendant Rice's testimony to the contrary was not credible. The Illinois Appellate Court affirmed the ruling.

(b) In or about September 1987, a different Robert Smith was interrogated by Defendants Rice, McWeeny and McGovern, among others, in connection with a double murder. In pretrial testimony, Smith swore that: (i) Defendant McWeeny beat him in the chest; (ii) Defendant McGovern choked him and shoved a handkerchief down his throat; and (iii) Defendant Rice and another detective threatened to "slam [his] n*gg*r * ass all over this room." According

to Smith, he confessed because he was tired, scared and felt like he had broken ribs.  In 2013, the Torture Inquiry and Relief Commission found Smith's claim credible based, in part, on hospital records that substantiated the physical abuse.

      (c)     On November 2, 1983, Chicago Police Department Detectives and Burge protégés John Byrne and Peter Dignan arrested Darrell Cannon for the murder of Darrin Ross, a murder he did not commit.  *En route* to Area Two, the detectives informed Cannon that they had a "scientific way of interrogating niggers," and that he was in for the "hardest day of his life."  Once at Area Two, Cannon was handcuffed to a wall.  While handcuffed, Defendant Bosco asked Cannon if he wanted to talk.  When Cannon exercised his right to remain silent, Defendant Bosco opened a brown paper sack and revealed an electric cattle prod.  Defendant Bosco assured Cannon that he would think better of his decision and would talk before the end of the day.  Cannon was then transported to an isolated area on the South Side of Chicago, where Defendant Bosco, along with Detectives Byrne and Dignan repeatedly pressed the electric cattle prod to Cannon's testicles.  They also placed what they told Cannon was a loaded shotgun in Cannon's mouth and pulled the trigger three times.  When these tactics finally caused Cannon to falsely confess, Defendant Bosco and the other detectives drove Cannon to an auto pound where he then recanted his confession.  The torture immediately resumed.  At that time, Defendant McWeeny joined in the tortuous activity, which consisted of shoving the cattle prod into Cannon's mouth until he, again, agreed to falsely confess.  Defendants Bosco and McWeeny and the other two detectives later perjured themselves in court, denying Cannon was abused.

      (d)     Defendants Bosco and McWeeny were subpoenaed in connection with the Special Prosecutor's Report.  The report mentions Defendant Bosco in connection with allegations of torture made by David Bates and Gregory Banks, among others.  Moreover, the report found

that Defendant McWeeny participated in the beating of an individual named Madison Hobley and played a role in the tortuous interrogations of individuals named Stanley Howard and Aaron Patterson. The report also concluded that an individual named Melvin Jones provided truthful information about his claim of a torturous interrogation. Both Defendant Bosco and Defendant McWeeny were involved in that interrogation, which was led by Burge. Notably, the report names Defendant McWeeny in connection with eleven of the 107 torture cases identified within the report. The Torture Inquiry and Relief Commission has referred to Defendant McWeeny as a "well-known Burge subordinate."

(e)     During the 1986 interrogation of Clarence Trotter, Defendant Nitsche played the role of the "good cop," as he did with Mr. Batchelor. Defendant Nitsche was present when a different detective placed a typewriter bag on Trotter's head and other detectives punched him. Defendant Nitsche later gave Trotter cigarettes and told him, "I told you things could get kind of rough . . . . Why don't you be more cooperative? I really don't condone acts of physical violence . . . so to speak." At that point, Trotter confessed to murder. An appellate court found Defendant Nitsche's conduct during Trotter's custodial interrogation constituted "coercive pressures."

**ANSWER:**     Individual Defendants deny each and every allegation in paragraph 118 including subparagraphs a) through e).

***Defendant City of Chicago's Training, Supervisory, and Disciplinary Practices, and the Police Code of Silence***

119.     Defendant City of Chicago's policies and practices for training, supervising, monitoring, and disciplining its officers, and its code of silence, also caused the Defendant Officers to believe that they could physically and psychologically abuse Mr. Batchelor and Mr. Bailey, coerce their false confessions, and cover up what they did – all without fear of discipline.

**ANSWER:**    Individual Defendants deny that they physically or psychologically abused Plaintiff or Bailey. Individual Defendants further deny they coerced the confession of Plaintiff or Bailey. Individual Defendants deny the remaining allegations contained in paragraph 119.

120.    As a matter of both policy and practice, municipal policy makers and Chicago Police Department supervisors condoned and facilitated a code of silence within the Chicago Police Department.  In accordance with this code, Chicago Police Department detectives refused to report, and otherwise lied about, misconduct committed by their colleagues, including the misconduct at issue in this case.  Defendant City of Chicago's training, supervisory, and disciplinary practices supported this code of silence, by protecting from discipline officers who engaged in physical and psychological coercion and teaching police officers that they must abide by the code.

**ANSWER:**    Individual Defendants deny the allegations contained in paragraph 120.

121.    As a result of Defendant City of Chicago's established practice of suppressing, withholding and destroying exculpatory and impeachment evidence through the use of street files or parallel files, failing to track and identify police officers who are repeatedly accused of the same kinds of serious misconduct; failing to properly investigate cases in which the police are implicated in obtaining coerced and false statements, as well as wrongful charges and convictions; failing to discipline officers accused of this unlawful conduct; and facilitating a code of silence within the Chicago Police Department, Chicago Police Department officers (including the Defendant Officers, here) came to believe that they may violate the civil rights of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse consequences.

**ANSWER:**    Individual Defendants deny the allegations contained in paragraph 121.

122.    Defendant City of Chicago's failure to train, supervise and discipline its officers

36

effectively condones, ratifies and sanctions the kind of misconduct that the Defendant Officers committed against Mr. Batchelor in this case. Constitutional violations such as those that occurred in this case are encouraged and facilitated as a result of Defendant City of Chicago's practices and *de facto* policies, as alleged above.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 122.

123. Defendant City of Chicago and officials within the Chicago Police Department failed to act to remedy the abuses described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Mr. Batchelor's ongoing injuries.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 123.

124. The policies and practices described in the foregoing paragraphs were consciously approved by Defendant City of Chicago policymakers who were deliberately indifferent to the violations of constitutional rights described herein.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 124.

### Mr. Batchelor's Damages

125. Defendants robbed Mr. Batchelor of his hopes and dreams of a better life. As a result of Mr. Batchelor's wrongful conviction, he spent fifteen years locked up behind bars, with the liberties granted to free citizens stripped from him.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 125.

126. Defendants destroyed Mr. Batchelor's life without any warning. As of the filing of this Complaint, more than half of Mr. Batchelor's life has been consumed by the horror of his wrongful conviction and imprisonment.

**ANSWER:**    Individual Defendants deny the allegations contained in paragraph 126.

127.    Because of Defendants' misconduct, Mr. Batchelor was stripped of his young adulthood and deprived of all of the basic pleasures of human experience, which all free people enjoy as a matter of right, including the freedom to live one's life as an autonomous human being.

**ANSWER:**    Individual Defendants deny they engaged in misconduct. Individual Defendants deny the remaining allegations contained in paragraph 127.

128.    In addition to the severe trauma of wrongful imprisonment and Mr. Batchelor's loss of liberty, Defendants' misconduct continues to cause Mr. Batchelor extreme physical and psychological pain and suffering, humiliation, fear, anxiety, deep depression, despair and other physical and psychological effects.

**ANSWER:**    Individual Defendants deny misconduct. Individual Defendants deny the remaining allegations contained in paragraph 128.

**COUNT I – 42 U.S.C. § 1983**
**Coerced Confession**
**(Fifth and Fourteenth Amendments)**

129.    Mr. Batchelor incorporates paragraphs 1 through 124 of the Complaint as if fully stated here.

**ANSWER:** Individual Defendants incorporate and fully restate herein their answers to paragraph 1 through 124 of this Complaint.

128.    In the manner described more fully above, the Defendant Officers individually, jointly and in conspiracy with one another, and others unknown, took Mr. Batchelor into custody and utilized coercive tactics that preyed on his known vulnerabilities, rendered him unable to exercise and understand his rights to counsel and to remain silent, and forced him to make false statements involuntarily and against his will, which statements incriminated him and were used

against him in criminal proceedings, in violation of his rights secured by the Fifth and Fourteenth Amendments.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 128.

129. In addition, the Defendant Officers individually, jointly and in conspiracy with one another, used physical violence and extreme psychological coercion in order to force Mr. Batchelor to incriminate himself falsely and against his will in a crime he had not committed, in violation of his right to due process secured by the Fourteenth Amendment. This misconduct: (a) was so severe as to shock the conscience; (b) was designed to injure Mr. Batchelor; and (c) was not supported by any conceivable governmental interest.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 129 including a denial of subparts a) through c).

130. Specifically, the Defendant Officers conducted and participated in an unconstitutional lengthy interrogation of Mr. Batchelor while he was in custody, using physical violence and psychological coercion, which overbore Mr. Batchelor's will and resulted in him making involuntary statements implicating himself.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 130.

131. Those incriminating statements were used against Mr. Batchelor to his detriment throughout his criminal case to deprive him of his liberty – namely, the incriminating statements were the reason Mr. Batchelor was prosecuted, jailed, convicted and imprisoned.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 131.

132. The Defendant Officers' misconduct described in this Count was undertaken intentionally, with malice, and with deliberate and reckless indifference to Mr. Batchelor's clearly established constitutional rights.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 132.

133.     As a result of the misconduct described in this Count, Mr. Batchelor suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 133.

134.     The misconduct described in this Count by the Defendant Officers was undertaken pursuant to the policy and practice of Defendant City of Chicago, in the manner more fully described in Count VII, below.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 134.

**COUNT II – 42 U.S.C. § 1983**
**Fabrication of Evidence**
**(Fourteenth Amendment)**

135.     Mr. Batchelor incorporates paragraphs 1 through 124 of the Third Amended Complaint as if fully stated here.

**ANSWER:**     Individual Defendants incorporate and fully restate herein their answers to paragraph 1 through 124 of this Complaint.

136.     In the manner described more fully above, the Defendant Officers deprived Mr. Batchelor of his constitutional right to due process protected by the Fourteenth Amendment, by fabricating, among other things: (a) a false confession which was attributed to Mr. Batchelor and used against him in his criminal proceedings; (b) one or more false witness statements implicating Mr. Batchelor in crimes he did not commit, which the Defendant Officers knew to be false; (c) fabricated polygraph examination results that falsely inculpated Mr. Batchelor and concealed the fact that the Defendants disregarded alternate suspects in an effort to charge Mr. Batchelor; and (d) false police reports that implicated Mr. Batchelor in the crime.

**ANSWER:**    Individual Defendants deny the allegations contained in paragraph 134 including a denial of subparts a) through d).

137.    As set forth above, the Defendant Officers used physical violence and psychological abuse to extract Mr. Batchelor and Mr. Bailey's false confessions – confessions that they knew to be false and both of which implicated Mr. Batchelor – and then engaged in conduct to cover-up their actions.  The misconduct described in this Count was undertaken intentionally, with malice and reckless and deliberate indifference to Mr. Batchelor's constitutional rights.

**ANSWER:**    Individual Defendants deny the allegations contained in paragraph 137.

138.    As a result of the Defendant Officers' misconduct described in this Count, Mr. Batchelor suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering and other grievous and continuing injuries and damages as set forth above.

**ANSWER:**    Individual Defendants deny the allegations contained in paragraph 138.

139.    The Defendant Officers' misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago, in the manner more fully described in Count VII, below.

**ANSWER:**    Individual Defendants deny the allegations contained in paragraph 139.

**COUNT III – 42 U.S.C. § 1983**
**Due Process – Suppression of Exculpatory Evidence**
**(Fourteenth Amendment)**

140.    Mr. Batchelor incorporates paragraphs 1 through 124 of the Third Amended Complaint as if fully stated here.

**ANSWER:**    Individual Defendants incorporate and fully restate herein their answers to paragraph 1 through 124 of this Complaint.

141.    As described in detail above, the Defendant Officers, while acting individually, jointly and in conspiracy with one another, deprived Mr. Batchelor of his constitutional right not to be deprived of his liberty without due process of law.

**ANSWER:**    Individual Defendants deny the allegations contained in paragraph 141.

142.    In the manner described more fully above, the Defendant Officers deliberately withheld material exculpatory evidence, including evidence upon which State witnesses could be impeached, from Mr. Batchelor and from prosecutors, among others, thereby misleading and misdirecting the criminal prosecution of Mr. Batchelor.

**ANSWER:**    Individual Defendants deny the allegations contained in paragraph 142.

143.    Specifically, the Defendant Officers deliberately withheld evidence showing: (a) the false nature of Mr. Bailey's false and coerced confession; (b) the false nature of the polygraph examinations administered to Mr. Batchelor and Mr. Bailey; (c) the actual polygraph results from examinations of Mr. Batchelor, Mr. Bailey, and multiple third-parties, results that would have not only impeached the Defendants' false police reports but also severely impeached the good-faith of the police investigation; (d) Larry D. Johnson's lack of credibility; (e) the Defendant Officers' pattern of abuse similar to that inflicted upon Mr. Batchelor, as well as their pattern of dishonesty; and (f) other exculpatory and impeachment evidence through the use of street files or parallel files.

**ANSWER:**    Individual Defendants deny the allegations contained in paragraph 143 including a denial of subparts a) through f).

144.    The Defendant Officers also suppressed the fabricated nature of the evidence they presented to the prosecutors responsible for Mr. Batchelor's prosecution.

**ANSWER:**    Individual Defendants deny the allegations contained in paragraph 144.

145.    In addition, on information and belief, the Defendant Officers concealed and

fabricated additional evidence that is not yet known to Mr. Batchelor.

**ANSWER:**    Individual Defendants deny the allegations contained in paragraph 145.

146.    The Defendant Officers' misconduct directly resulted in the unjust and wrongful criminal prosecution and conviction of Mr. Batchelor and the deprivation of Mr. Batchelor's liberty, thereby denying his constitutional right to due process guaranteed by the Fourteenth Amendment.

**ANSWER:**    Individual Defendants deny the allegations contained in paragraph 146.

147.    The Defendant Officers' misconduct described in this Count was undertaken intentionally, with malice and reckless and deliberate indifference to Mr. Batchelor's constitutional rights.

**ANSWER:**    Individual Defendants deny the allegations contained in paragraph 147.

148.    As a result of the misconduct of the Defendant Officers described in this Count, Mr. Batchelor suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering and other grievous and continuing injuries and damages.

**ANSWER:**    Individual Defendants deny the allegations contained in paragraph 148.

149.    The Defendant Officers' misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago, in the manner more fully described in Count VII, below.

**ANSWER:**    Individual Defendants deny the allegations contained in paragraph 149.

### COUNT IV – 42 U.S.C. § 1983
### *Manuel* Claim – Deprivation of Liberty Without Probable Cause
### (Fourth and Fourteenth Amendments)

150.    Mr. Batchelor incorporates paragraphs 1 through 124 of the Third Amended Complaint as if fully stated here.

43

**ANSWER:** Individual Defendants incorporate and fully restate herein their answers to paragraph 1 through 124 of this Complaint.

151.    The Defendant Officers caused Mr. Batchelor to be unreasonably seized, detained, imprisoned and deprived of his liberty without probable cause to believe that he had committed a crime, in violation of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 151.

152.    The misconduct described in this Count was undertaken pursuant to Defendant City of Chicago's policy and practice in the manner more fully described in Count VII, below.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 152.

153.    As a result of this misconduct, Mr. Batchelor lost his freedom and sustained, and continues to sustain, injuries, including physical injury and sickness and emotional pain and suffering.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 153.

### COUNT V – 42 U.S.C. § 1983
### Failure to Intervene

154.    Mr. Batchelor incorporates paragraphs 1 through 124 of the Third Amended Complaint as if fully stated here.

**ANSWER:** Individual Defendants incorporate and fully restate herein their answers to paragraph 1 through 124 of this Complaint.

155.    In the manner described more fully above, by their conduct and under color of law, during the constitutional violations described herein, one or more of the Defendant Officers stood by without intervening to prevent the violation of Mr. Batchelor's constitutional rights, even though they had the opportunity and duty to do so.

44

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 155.

156.     Defendant Officers' actions and omissions in the face of a constitutional duty to intervene were the direct and proximate cause of Mr. Batchelor's constitutional violations and injuries, including but not limited to loss of liberty, physical harm and emotional distress.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 156.

157.     The Defendants Officers' misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago, in the manner more fully described in Count VII, below.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 157.

## COUNT VI – 42 U.S.C. § 1983
## Conspiracy to Deprive Constitutional Rights

158.     Mr. Batchelor incorporates paragraphs 1 through 124 of the Third Amended Complaint as if fully stated here.

**ANSWER:**     Individual Defendants incorporate and fully restate herein their answers to paragraph 1 through 124 of this Complaint.

159.     After Ms. Woods' murder, the Defendant Officers agreed among themselves and with other individuals to deprive Mr. Batchelor of his constitutional rights, guaranteed by the Fourth, Fifth, and Fourteenth Amendments, as described in the various paragraphs of this Complaint. The Defendant Officers conspired to deprive Mr. Batchelor of his liberty, to coerce him into giving a false confession, and to frame him for the murder of Lula Mae Woods, a crime the Defendant Officers knew that he did not commit.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 159.

160.     In furtherance of the conspiracy, each of the coconspirators engaged in and facilitated numerous overt acts, including but not limited to those set forth above – such as seizing,

detaining, and imprisoning Mr. Batchelor without probable cause to believe that he had committed a crime; fabricating evidence; suppressing or destroying exculpatory evidence; coercing false confessions; and committing perjury during trial – and was an otherwise willful participant in joint activity.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 160.

161.    Each of the Defendant Officers was a voluntary participant in the common venture to deprive Mr. Batchelor of his Fourth, Fifth, and Fourteenth Amendment rights.  Each of the Defendant Officers personally participated in the unconstitutional conduct or acted jointly with other defendants who participated or acquiesced in the unconstitutional conduct, or was at least aware of the conduct or plan, and failed to take action to prevent such conduct from occurring.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 161.

162.    As a direct and proximate result of the illicit prior agreement and actions in furtherance of the conspiracy referenced above, Mr. Batchelor's rights were violated, and he suffered injuries, including but not limited to loss of liberty, physical harm and emotional distress.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 162.

163.    The Defendant Officers' misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago, in the manner more fully described in Count VII, below.

**ANSWER:** Individual Defendants deny that they engaged in misconduct**.** Individual Defendants deny the allegations contained in paragraph 163.

## COUNT VII – 42 U.S.C. § 1983
### Policy and Practice Claim Against Defendant City of Chicago

164.    Mr. Batchelor incorporates paragraphs 1 through 124 of the Third Amended Complaint as if fully stated here.

46

**ANSWER:** Individual Defendants incorporate and fully restate herein their answers to paragraph 1 through 124 of this Complaint.

165.    As described more fully herein, Defendant City of Chicago is liable for the violation of Mr. Batchelor's constitutional rights by virtue of its official policies, as more fully described above.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 165.

166.    The actions of the Defendant Officers were undertaken pursuant to policies, practices, and customs of the Chicago Police Department, described above, which were approved, encouraged, and/or ratified by policymakers for Defendant City of Chicago with final policymaking authority.

**ANSWER:** Individual Defendants deny that they engaged in misconduct**.** Individual Defendants deny the allegations contained in paragraph 166.

167.    These policies and practices included the suppression, withholding and destruction of exculpatory and impeachment evidence through the use of street files or parallel files, the failure to adequately train, supervise, monitor, and discipline officers who engaged in constitutional violations, as set forth in greater detail above, pursuing wrongful convictions through reliance on profoundly flawed investigations and coerced and fabricated confessions, and the police code of silence.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 167.

168.    One or more of the policies, practices, and customs described in this Count was maintained and implemented by Defendant City of Chicago with deliberate indifference to Mr. Batchelor's constitutional rights and was a moving force behind the violations of those rights.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 168.

169.     As a direct and proximate result of the Defendant City of Chicago's actions and inactions, Mr. Batchelor's constitutional rights were violated, and he suffered injuries and damages, as set forth in this Complaint.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 169.

## COUNT VIII – State Law Claim
## Malicious Prosecution

170.     Mr. Batchelor incorporates paragraphs 1 through 124 of the Third Amended Complaint as if fully stated here.

**ANSWER:**     Individual Defendants incorporate and fully restate herein their answers to paragraph 1 through 124 of this Complaint.

171.     The Defendant Officers individually, jointly and in conspiracy, initiated and continued false criminal charges against Mr. Batchelor without probable cause to believe that he had committed a crime, and they made statements to prosecutors with the intent of exerting influence and to institute and continue the judicial proceedings.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 171.

172.     The Defendant Officers, individually, jointly and in conspiracy, caused Mr. Batchelor to be improperly subjected to judicial proceedings for which there was no probable cause.  These judicial proceedings were instituted and continued maliciously, resulting in injury.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 172.

173.     At all relevant times, the Defendant Officers knew that the evidence upon which the prosecutors pursued their case against Mr. Batchelor was coerced and fabricated and that no true or reliable evidence implicated Mr. Batchelor in Ms. Woods' murder.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 173.

174.     The Defendant Officers' actions were intentional, malicious, willful and wanton

48

and exhibited a deliberate indifference to or reckless disregard for Mr. Batchelor and others' rights and safety.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 174.

175.     The charges against Mr. Batchelor were terminated in his favor on January 30, 2018.

**ANSWER:**     Individual Defendants lack knowledge and information sufficient in which to admit or deny the allegations contained in paragraph 175.

176.     As a direct and proximate result of this misconduct, Mr. Batchelor sustained, and continues to sustain, injuries as set forth above, including pain and suffering.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 176.

**COUNT IX – State Law Claim**
**Intentional Infliction of Emotional Distress**

177.     Mr. Batchelor incorporates paragraphs 1 through 124 of the Third Amended Complaint as if fully stated here.

**ANSWER:**     Individual Defendants incorporate and fully restate herein their answers to paragraph 1 through 124 of this Complaint.

178.     The acts and conduct of the Defendant Officers were extreme and outrageous. The Defendant Officers' actions were rooted in an abuse of power and authority, and they were undertaken with an intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Mr. Batchelor, as alleged more fully above. The Defendant Officers' actions were also willful and wanton.

**ANSWER:**     Individual Defendants deny they engaged in misconduct or conduct that was "extreme or outrageous." Individual Defendants deny the remaining allegations contained in paragraph 178.

179.     As a direct and proximate result of the actions of the Defendant Officers, Mr. Batchelor suffered and continues to suffer severe emotional distress.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 179.

## COUNT X – State Law Claim
## Civil Conspiracy

180.     Mr. Batchelor incorporates paragraphs 1 through 124 of the Third Amended Complaint as if fully stated here.

**ANSWER:**     Individual Defendants incorporate and fully restate herein their answers to paragraph 1 through 124 of this Complaint.

181.     As described more fully in the preceding paragraphs, the Defendant Officers, acting in concert with other known and unknown coconspirators, conspired by concerted action to maliciously prosecute Mr. Batchelor and continue said prosecution, and to intentionally inflict severe emotional distress on Mr. Batchelor.

**ANSWER:**     Individual Defendants deny the allegations contained in paragraph 181.

182.     In furtherance of the conspiracy, the Defendants Officers committed the overt acts set forth above.

**ANSWER:**     Individual Defendants deny they committed the "overt acts" set forth in this Complaint. Individual Defendants deny the remaining allegations contained in paragraph 182.

183.     The misconduct described in this Count was undertaken intentionally, with malice, willfulness and reckless indifference to the rights of others.  The Defendant Officers' actions were also willful and wanton.

**ANSWER:**     Individual Defendants deny that they engaged in misconduct. Individual Defendants deny the remaining allegations contained in paragraph 183.

184.     As a direct and proximate result of the Defendant Officers' conspiracy, Mr.

50

Batchelor suffered damages, including severe emotional distress and anguish, as is alleged more fully above.

**ANSWER:** Individual Defendants deny the allegations contained in paragraph 184.

### COUNT XI – State Law Claim
### *Respondeat Superior*

185. Mr. Batchelor incorporates paragraphs 1 through 124 of the Third Amended Complaint as if fully stated here.

**ANSWER:** Individual Defendants incorporate and fully restate herein their answers to paragraph 1 through 124 of this Complaint.

186. In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers was a member of, and agent of, the Chicago Police Department, acting at all relevant times within the scope of his employment.

**ANSWER:** Individual Defendants admit that they were employees of the Chicago Police Department and the City of Chicago and were acting within their scope of their employment at the relevant time. Individual Defendants deny that they engaged in any of the misconduct alleged in the preceding paragraphs and further incorporate and restate their answers to those paragraphs here.

187. Defendant City of Chicago is liable as principal for all torts committed by its agents.

**ANSWER:** Individual Defendants deny that they committed any torts alleged in this Complaint.

### COUNT XII – State Law Claim
### Indemnification

188. Mr. Batchelor incorporates paragraphs 1 through 124 of the Third Amended Complaint as if fully stated here.

**ANSWER:** Individual Defendants incorporate and fully restate herein their answers to paragraph 1 through 124 of this Complaint.

51

189. Illinois law – 745 ILCS 10/9-102 – provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

**ANSWER:** To the extent an answer is deemed necessary, Individual Defendants admit that 745 ILCS 10/9-102 sets forth that a local public entity is empowered and directed to pay any tort judgement or settlement for compensatory damages for which it or an employee while acting with the scope of his employment is liable in the manner provided in 745 ILCS 10.

190. The Defendant Officers are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein. Therefore, Defendant City of Chicago is responsible for any judgment entered against the Defendant Officers and for any judgment entered against them.

**ANSWER:** Individual Defendants admit that they were employees of the Chicago Police Department and the City of Chicago and were acting within their scope of their employment at the relevant time. Individual Defendants deny that they engaged in any of the misconduct alleged in the preceding paragraphs and further incorporate and restate their answers to those paragraphs here.

## **AFFIRMATIVE DEFENSES**

1. At all times material to the events alleged in Plaintiff's Complaint, reasonably competent police officers, objectively viewing the facts and circumstances then confronting Individual Defendants, would have believed that the actions taken were objectively reasonable and were within clearly established constitutional limits. Individual Defendants, therefore, are entitled to qualified immunity.

2. Under the Illinois Tort Immunity Act, each Individual Defendants is not liable

under state law for any injury caused by the act or omission of another person. 745 ILCS 10/2-204.

3. Under the Illinois Tort Immunity Act, Individual Defendants are not liable for their respective acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2-202.

4. Under the Illinois Tort Immunity Act, Individual Defendants are not liable for injury caused by their instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless they act maliciously and without probable cause. 745 ILCS 10/2-208.

5. Individual Defendants are absolutely immune for any testimony they may have given in Plaintiff's underlying criminal case. *See Briscoe v. LaHue*, 460 U.S. 325 (1983).

6. Plaintiff's claims are barred by the applicable statute of limitations.

7. Plaintiff's claims in the complaint are barred by the doctrines of *res judicata* and collateral estoppel.

8. To the extent Plaintiff is asserting a federal malicious prosecution claim, such claim fails as a matter of law. *Manuel v. City of Joliet, Illinois*, 903 F.3d 667, 670 (7th Cir. 2018); *see also Manuel v. City of Joliet,* 137 S. Ct. 911, 918-19 (2017).

9. To the extent Plaintiff is asserting a due process fabrication of evidence claim based on allegedly fabricated evidence that was not admitted at trial, such claim fails as a matter of law. *See Avery v. City of Milwaukee*, 847 F.3d 433, 442 (7th Cir. 2017).

10. Count III fails to state a claim upon which relief may be granted. *Avery*, 847 F.3d at 439; *Mack*, 723 Fed. Appx. 374, 375–76 (7th Cir. 2018).

11.     To the extent any injuries or damages claimed by Plaintiff were proximately caused, in whole or in part, by negligent, willful, wanton, and/or other wrongful conduct on the part of Plaintiff as reflected in the public record, including but not limited to police reports, any verdict or judgment obtained by Plaintiff must be reduced by an amount commensurate with the degree of fault attributed to Plaintiff by the jury in this case.

12.     To the extent Plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle that a plaintiff has a duty to mitigate his or her damages.

## Jury Demand

Individual Defendants respectfully request a trial by jury.

Respectfully submitted,

*/s/ Allyson L. West*
Allyson L. West

Andrew M. Hale
Allyson L. West
Amy A. Hijjawi
Anthony E. Zecchin
Shawn W. Barnett
Hale & Monico LLC
53 W. Jackson Blvd., Suite 337
Chicago, IL 60604
Phone: 312-341-9646
Fax: 312-341-9656

## CERTIFICATE OF SERVICE

I, the undersigned attorney, certify that I filed the foregoing document with the Clerk of the Northern District of Illinois using the Court's electronic filing system. As a result, copies of the filed document were electronically served upon all counsel of record. A courtesy copy of the filed document may have been provided to the Court, depending upon the Court's standing order.


*/s/ Allyson L. West*