IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COREY BATCHELOR, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:18-cv-08513 |
| ) | |
| v. ) | Judge John F. Kness |
| ) | |
| CITY OF CHICAGO, *et al.* ) | Magistrate Judge Heather K. McShane |
| ) | |
| Defendants. ) | |

**PLAINTIFF COREY BATCHELOR'S MOTION TO COMPEL DEFENDANT
CITY OF CHICAGO TO PRODUCE DOCUMENTS RESPONSIVE
TO PLAINTIFF'S POLYGRAPH-RELATED DISCOVERY REQUESTS**

Pursuant to Federal Rule of Civil Procedure 37, Plaintiff Corey Batchelor, by his attorneys, respectfully requests that this Court enter an order compelling Defendant City of Chicago (the "City") to produce documents responsive to Plaintiff's polygraph-related discovery requests. In support thereof, Plaintiff states as follows:

### INTRODUCTION

Plaintiff Corey Batchelor alleges he was wrongly convicted of a murder he did not commit because of extreme misconduct by several former Chicago Police Department detectives and officers, including three polygraph examiners – Defendants Tovar, McCardle and Stout (the "Polygraph Defendants"). Plaintiffs' Third Amended Complaint alleges that staged and manipulated polygraph examinations played a critical role in overcoming Plaintiff's will and led to his false confession, as well as the false confession of Kevin Bailey. As a result, both Plaintiff and Mr. Bailey were wrongly convicted. Plaintiff spent fifteen years in prison for a crime he did not commit.

1

Plaintiff's Third Amended Complaint alleges civil rights and state law claims against the City and numerous individual defendant officers, including the Polygraph Defendants. On April 30, 2020, Plaintiff served his Second Requests for Production to Defendant City of Chicago (the "Document Requests") and Third Set of Interrogatories to Defendant City of Chicago (the "Interrogatories") seeking information related to: (a) polygraph examinations administered by the Polygraph Defendants and other Chicago Police Department polygraph examiners; and (b) the City of Chicago's policies and procedures for polygraph examinations. While months have passed since Plaintiff issued the Document Requests and Interrogatories, the City has yet to produce any responsive documents or provide a substantive response to the Interrogatories. During this time, Plaintiff has made numerous attempts to negotiate a good faith compromise with the City that would result in the City responding to the discovery requests. However, the City has stonewalled.

## FACTUAL BACKGROUND

*Plaintiff's Allegations*

Plaintiff alleges he was wrongly convicted of the 1989 murder of Lula Mae Woods as the result of investigative misconduct by numerous Chicago Police Department detectives and officers, including the Polygraph Defendants. *See* Dkt. 122. Plaintiff contends his conviction rested on a false confession extracted by Defendants through violence and other illegal interrogation tactics, including staged and manipulated polygraph examinations and false reports regarding the results of the examinations. *See id.* ¶¶ 1, 34, 42, 50, 54-60.

Specifically, Plaintiff alleges that Defendant Tovar subjected Plaintiff to a lengthy and staged polygraph examination that Defendant Tovar falsely reported that Plaintiff had failed when, in fact, the examination revealed Plaintiff was being truthful. *See id.* ¶¶ 54-60. Plaintiff

2

further alleges that Defendant McCardle engaged in similar misconduct with respect to Mr. Bailey, a friend of Plaintiff, who also was wrongly convicted of the murder at issue. *See id.* ¶¶ 63-67. Plaintiff alleges that Defendant Stout also falsely reported the results of polygraph examinations of other suspects – reporting that their examinations showed the alternative suspects were being truthful when, in fact, the actual results showed they were being deceptive. *See id.* ¶ 34. Plaintiff alleges that the combination of the staged and manipulated polygraph examinations of Mr. Bailey and Plaintiff, along with Defendants' other abusive and unlawful tactics, overcame Plaintiff's will and resulted in him falsely confessing to a murder he did not commit. *See id.* ¶¶ 1, 50-78.

***Plaintiff's Polygraph-Related Discovery Requests***

In order to effectively prosecute his claims against the individual defendant officers, particularly the Polygraph Defendants, on April 30, 2020, Plaintiff issued carefully-tailored discovery requests to the City asking for information and documents related to the administration of polygraph examinations by the Polygraph Defendants and other polygraph examiners within the Chicago Police Department. Exhibit 1 (Document Requests); Exhibit 2 (Interrogatories). Specifically, Plaintiff sought to discover the following information:

- The Chicago Police Department's written policies with respect to the administration of polygraph examinations in the context of criminal investigations for the period January 1989 to the present (Ex. 1 at Request 1);

- Each polygraph examination, and documents related thereto, conducted by the Polygraph Defendants between January 1, 1985 and December 1, 1995 in homicide and/or sexual assault investigations conducted by the Chicago Police Department (Ex. 2 at Interrogatory 1; Ex. 1 at Request 2); and

- For the period January 1, 1985 through December 31, 1990, documents related to each polygraph examination administered by the Chicago Police Department in a criminal investigation (Ex. 1 at Request 3).

3

On June 1, 2020, the City served its responses to the Document Requests and Interrogatories. Exhibit 3 (Response to Document Requests); Exhibit 4 (Answers to Interrogatories). The City did not produce any documents[1] or provide any substantive answer to Plaintiff's interrogatory. *See id.* Instead, the City asserted myriad and lengthy boilerplate objections. With respect to Requests 2 and 3, the City incorrectly contended that Plaintiff sought to engage in *Monell* discovery.[2] *See* Ex. 3.

***Efforts to Resolve the Discovery Dispute***

Plaintiff disagreed with the City's refusal to provide the requested discovery. In an effort to resolve the dispute without the need for Court intervention, Plaintiff's counsel and counsel for Mr. Bailey[3] engaged in a lengthy conferral process with the City.

During a Rule 37.2 conference on July 15, 2020, the City contended that the time period covered by Interrogatory 1 and Request 2 was overbroad and agreed to provide a time period it deemed reasonable on or before July 17, 2020, unless it needed additional time to make the determination. *See* Exhibit 5 (July 16, 2020 Email). Moreover, the City requested that Plaintiff withdraw his request for polygraph information in sexual assault investigations. *See id.* With respect to Request 1, the City contended that the time period sought was overbroad and agreed to provide a time period it deemed reasonable on or before July 17, 2020, unless it needed additional time to make the determination. *See id.* With respect to Request 3, the City contended that the request sought *Monell* discovery. *See id.* Plaintiff disagreed and asserted that the

---

[1] The City agreed to produce its polygraph policies and procedures for the limited time period 1985 through 1990. However, it has not yet done so.
[2] Prior to reassignment to Judge Kness, Judge Bucklo bifurcated *Monell* discovery. Dkt. 104. Plaintiff has moved to reconsider that decision. Dkt. 118. The motion is pending.
[3] Mr. Bailey has filed a separate lawsuit that is pending before Judge Tharp. *See Bailey v. City of Chicago*, No. 1:19-cv-00197 (N.D. Ill.) (Tharp, J.). Mr. Bailey issued very similar polygraph-related discovery requests to those issued by Plaintiff.

information sought was directly relevant to Plaintiff's claims against the Polygraph Defendants. *See id.*

The City did not provide Plaintiff with any additional information on July 17, 2020 or otherwise seek additional time to provide the information. *See* Exhibit 6 (July 19, 2020 Email). As such, Plaintiff's counsel followed up with the City by email on July 19, 2020. *Id.* At that time, Plaintiff agreed to narrow Interrogatory 1 and Request 2 by removing the request for polygraph information in sexual assault investigations. *See id.* Plaintiff also requested that on or before July 21, 2020, the City provide the time periods it deemed reasonable for Plaintiff's discovery requests. *See id.*

In a July 20, 2020 email, the City contended that Interrogatory 1 and Request 2 were overbroad, unduly burdensome and sought irrelevant information. *See* Exhibit 7 (July 20, 2020 Email). The City stated that it was trying to determine if there was a way to make responding to the requests less burdensome and "hope[d] to have an answer . . . in the next *three weeks* so we can try to reach a compromise." *Id.* (emphasis added). The City did not provide a time period for the requests that it deemed reasonable. *See id.* With respect to Request 1, the City maintained that the time period proposed in its response – *i.e.* 1985 to 1990 – was reasonable. *See id.* With respect to Request 3, the City continued to maintain that Plaintiff sought *Monell* discovery. *Id.*

On July 22, 2020, counsel for Mr. Bailey responded to the City's July 20, 2020 email on behalf of Plaintiff and Mr. Bailey. Exhibit 8 (July 22, 2020 Email). Despite the City having refused to make any compromises regarding any of its responses, Plaintiff agreed to further narrow the scope of Interrogatory 1 and Request 2. *See id.* Specifically, Plaintiff agreed to narrow the relevant time period to January 1, 1985 through December 31, 1990. *Id.* Moreover, Plaintiff proposed a solution to reduce the alleged burden on the City of responding to

5

Interrogatory 1 and Request 2. *Id.* Additionally, Plaintiff addressed the City's misplaced relevancy objection, pointing out that, among other things, Plaintiff was entitled to learn what scoring methods the Polygraph Defendants used over time, whether the scoring methods used varied depending on the investigation and whether the Polygraph Defendants' scoring was consistent over time. *Id.* With regard to Request 1, Plaintiff maintained his position that the City's proposed limitation on the time period was too narrow. *See id.* Finally, with respect to Request 3, because the parties' positions on the whether the request sought *Monell* discovery previously had been asserted, no further progress was made on that issue.[4]

On July 31, 2020, counsel for Plaintiff, Mr. Bailey and the City engaged in another Rule 37.2 conference. *See* Exhibit 9 (July 31, 2020 Email). During the conference, the City rejected the proposal of Plaintiff and Mr. Bailey to lessen the alleged burden of Interrogatory 1 and Request 2 and continued to claim that it needed three weeks to first determine if there was a less burdensome way to respond to the requests, at which point it may assert further objections or seek to narrow the request. *See id.* The City made clear that it did not intend to produce responsive documents at the end of the three-week period. *Id.* The City did not address the outstanding issues with respect to the other discovery requests. *Id. See id.* The City agreed to provide an update by the end of the day on July 31, 2020 regarding whether it could lessen the three-week timeframe for obtaining further information about its responses to Interrogatory 1 and Request 2. *Id.*

Despite repeated requests for updated information by Plaintiff and Mr. Bailey, the City did not provide any further substantive information regarding the discovery requests at issue until September 8, 2020. *See* Exhibit 10 (Aug. 4, 2020 – Sept. 8, 2020 Email Chain). Even then,

---

[4] Discovery has not been bifurcated in Mr. Bailey's action. As such, Mr. Bailey highlighted that the City's "*Monell*" objection had no applicability.

6

the City only provided information regarding Interrogatory 1 and Request 2. *See id.* According to the City, for polygraph records for the 1993 to 1995 timeframe, the City would need to examine approximately 150 to 200 boxes of documents for responsive records and each box would take three hours to review, or at least 450 hours. *See id.* The City provided no foundation or evidence for its unsupported claims. *See id.* According to the City, polygraph records for the 1985 to 1992 timeframe were stored on microfilm, but the City did not know where the microfilm was stored. *Id.* The City stated it would update Plaintiff when it learned more about the microfilm but has not done so. *Id.*

***The Inspector General's Report Regarding the Chicago Police Department's Records***

In June 2020, the City of Chicago Office of Inspector General ("OIG") issued a scathing report regarding the Chicago Police Department's management and production of records. *See* Exhibit 11 (OIG Report). In relevant part, the OIG found that: (a) "CPD's records management and production processes are inadequate to meet its constitutional and legal obligations" (*id.* at 5); (b) "CPD is unable to ensure that all records responsive to a request or subpoena are produced because the Department has no means to effectively identify which records exist for any specific investigation or case" (*id.* at 24); and (c) "CPD lacks standard, consistent, management-driven practices to ensure all responsive records are produced" (*id.* at 27).

## ARGUMENT

**I.    Legal Standards**

The federal notice pleading system contemplates that parties will have broad discovery to investigate the facts and help define and clarify the issues. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 234 F.R.D. 447, 450 (N.D. Ill. 2006). Accordingly, Federal Rule of Civil Procedure 26(b)(1) provides:

7

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Information is relevant if it "bears on" or "reasonably could lead to other matter that could bear on" any material facts or issue in the action. *Oppenheimer*, 437 U.S. at 351. "The burden rests upon the objecting party to show why a particular discovery request is improper." *Parvati v. Oak Forest*, 2010 WL 2836739, at *1 (N.D. Ill. July 19, 2010). Courts have "extremely broad discretion in controlling discovery." *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013).

**II.      Plaintiff's Polygraph-Related Discovery Requests Are Relevant to His Claims.**

The polygraph-related information requested by Plaintiff is unquestionably relevant to his claims. Defendants' misuse and improper administration of polygraph examinations played a central role in the homicide investigation that led to Plaintiff's wrongful conviction. Indeed, Plaintiff has alleged that the Polygraph Defendants, acting in concert with the other Defendants, manipulated falsely reported the results of Plaintiff's polygraph examination, Mr. Bailey's polygraph examination and the polygraph examinations of other suspects in an effort to: (a) coerce Plaintiff and Mr. Bailey to falsely confess to a horrific crime they did not commit; and (b) wrongly convict them. Thus, discovery that will reveal how the Polygraph Defendants administered, scored and reported polygraph examinations over the narrow time period of 1985 to 1990 certainly "bears on" or "reasonably could lead to other matter that could bear on" any material facts or issue in this action. *See Oppenheimer*, 437 U.S. at 351. Specifically, the requested information could reveal whether the Polygraph Defendants routinely misused and

8

mis-administered polygraph examinations or whether their decision to do so in this case was driven by the circumstances. Relatedly, the information could lead to the discovery of important Federal Rule of Evidence 404(b) evidence. It could also reveal a lack of training or knowledge on the part of the Polygraph Defendants with respect to how to administer polygraph examinations.

Relatedly, information regarding how other polygraph examiners within the Chicago Police Department conducted their polygraph examinations bears on or could reasonably lead to other matter that could bear on whether the Polygraph Defendants properly conducted their polygraph examinations in this case. Plaintiff is entitled to know whether the Polygraph Defendants were the examiners of choice when it came to trying to coerce false confessions – *i.e.*, they were willing to falsify the results of the examinations. By obtaining evidence of how other polygraph examiners conducted, scored and reported their examinations, Plaintiff will be able to determine this information. Similarly, the requested information will allow Plaintiff to determine the scoring and administration method on which Chicago Police Department polygraph examiners were trained and whether the Polygraph Defendants conducted the examinations in this case consistently with that training.

Finally, information regarding the City's policies and practices regarding polygraph examinations for the period 1985 to the present bears on or could reasonably lead to other matter that could bear on material facts and issues in this case – *e.g.*, the way in which the City's polygraph policies and practices have changed or stayed the same overtime. Changes in the policies and practices is important to the determination of the propriety of the way in which the polygraph examinations were conducted in this case.

9

Notably, the City has made no serious objection to the relevancy of any of Plaintiff's discovery requests. While the City asserted in an email that Interrogatory 1 and Request 2 sought irrelevant information, as discussed above, they cannot credibly claim that information regarding other polygraph examinations administered by the Polygraph Defendants is outside of the broad confines of permissible discovery under Rule 26.

To the extent the City's contention that Plaintiff's request for information about the non-Polygraph Defendants' polygraph examinations constitutes *Monell* discovery is a relevance objection, the objection fails. As discussed above, the requested documents directly relate to Plaintiff's claims against the Polygraph Defendants and are essential to his ability to prove his claims. The fact that the requested information may also be relevant to Plaintiff's *Monell* claim is of no import and should not bear on the Court's decision.

### III. Plaintiff's Polygraph-Related Discovery Requests Are Proportional to the Needs of the Case.

Just as Plaintiff's polygraph-related discovery requests are relevant to his claims, they are proportional to the needs of this case. Notably, the City does not contest most of the proportionality factors set forth in Rule 26(b)(1) and solely focuses on the purported burden the requests for polygraph examination information places on the City. The City does not challenge that the needs of the case, the importance of the issues, the amount in controversy, the parties' access to relevant information, the parties' resources and the importance of the discovery in resolving the issues all weigh in favor of Plaintiff obtaining the discovery at issue. Nor could it given that: (a) the case involves Plaintiff's wrongful conviction that resulted in him being caged in a cell for fifteen years while missing out on the prime years of his life; (b) the information at issue is in the exclusive custody and control of the City; and (c) the City's use and administration of polygraph examinations is a critical issue in the case.

While the City contends that responding to the discovery will unduly burden the City because it will take hundreds of hours to find responsive materials, the claim is unsupported. The City has provided no evidence or affidavits of the length of time it will take to review the records or even how many pages of documents are in each of the 150 to 200 boxes of records. Similarly, while the City has not yet disclosed if it has been able to find the requested records that are on microfilm, it has provided no estimate as to how long it will take to review those records. Further, while Plaintiff has made multiple efforts to narrow his requests, the City has made clear that it is unwilling to produce any responsive documents, demonstrating that the City simply does not want to produce what likely is damning evidence.

The fact that the City maintains its records in an antiquated format and in a manner that does not allow it to easily locate files should not weigh in favor of their "unduly burdensome" argument. The Court should not reward the City for maintaining its records in a manner that is inadequate for it to meet its constitutional and legal obligations. *See* Ex. 11 at 5. But that is the City's position. From a public policy standpoint, allowing the City to benefit from its deficient document management practices would encourage other organizations to engage in like conduct knowing that it would allow them to avoid their discovery obligations. The Court should not provide the City or others with such an incentive to obstruct the discovery process.

Finally, it is worth noting that the volume of documents presently at issue is small compared to that frequently produced in complex civil cases in this District. *See, e.g., In re Biomet M2A Magnum Hip Implant Prods. Liab. Litig.*, 2013 WL 1729682, at *1 (N.D. Ind. Apr. 18, 2013) (2.5 million documents); *Rawat v. Navistar Int'l Corp.*, 2011 WL 3876957, at *11-13 (N.D. Ill. Sept. 1, 2011) (1,170,932 pages); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 237 F.R.D. 176, 183 (N.D. Ill. 2006) (4 million pages). Similarly, given the significance of

the issues in this case, any burden on the City of looking through its own records is far outweighed by the benefit to Plaintiff from receiving the requested records.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff Corey Batchelor respectfully requests that the Court issue an order compelling Defendant City of Chicago to: (a) serve complete answers to Plaintiff's Third Set of Interrogatories; and (b) to produce documents responsive to Plaintiff's Second Set of Requests for Production as those requests have been modified via the meet and confer process.

Dated: October 2, 2020

Respectfully submitted,

/s/ Scott R. Drury
One of the attorneys for Plaintiff

Jon Loevy (jon@loevy.com)
Roshna Bala Keen (roshna@loevy.com)
Scott R. Drury (drury@loevy.com)
Julie Goodwin (julie@loevy.com)
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
312.243.5900

Craig B. Futterman
(Futterman@uchicago.edu)
MANDEL LEGAL AID CLINIC
University of Chicago Law School
6020 S. University
Chicago, Illinois 60637
773.702.9611

## CERTIFICATE OF SERVICE

I, Scott R. Drury, an attorney, certify that on October 2, 2020, I caused the foregoing document to be filed using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Scott R. Drury
One of the attorneys for Plaintiff